1  Regina A. Petty (SBN 106163)
       E-Mail:  rpetty@fisherphillips.com
2  **FISHER & PHILLIPS LLP**
   4747 Executive Drive, Suite 1000
3  San Diego, California  92121
   Telephone:  (858)597-9600
4  Facsimile:  (858)597-9601

5  Caroline S. Scala (SBN 286495)
       E-Mail:  cscala@fisherphillips.com
6  **FISHER & PHILLIPS LLP**
   2050 Main Street, Suite 1000
7  Irvine, California  92614
   Telephone:  (949)851-2424
8  Facsimile:  (949)851-0152
   Attorneys for Defendant SPS Technologies, LLC dba Cherry Aerospace
9

10                 UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12

13  DANNIE CARMONA, an                    CASE NO.:
14  individual,

15                      Plaintiff,        **DEFENDANT'S NOTICE AND
                                          PETITION OF REMOVAL OF
16          v.                            ACTION PURSUANT TO 28 U.S.C.
                                          §§ 1332(a), 1441, AND 1446**
17  SPS TECHNOLOGIES, LLC, DBA
    CHERRY AEROSPACE, a                   *[Filed concurrently with Civil Cover
18  Pennsylvania limited liability        Sheet, Certificate of Interested Parties,
    company; TANNER TARDIFF an            Corporate Disclosure Statement, Notice
19  individual; THANA                     of Related Cases, and Declarations of
    KITTINATHONON, an individual;         Jason A. Dalton, Jennifer Adams and
20  CHARLES PALELLA, an                   Caroline S. Scala]*
    individual; and DOES 1-30,
21  inclusive,                            Complaint Filed:  October 28, 2021
                                          Trial Date:  None Set
22                      Defendants.

23

24

25

26       **TO PLAINTIFF, HIS COUNSEL OF RECORD AND TO THE CLERK**

27  **OF THE COURT FOR THE UNITED STATES DISTRICT COURT FOR**

28  **THE CENTRAL DISTRICT OF CALIFORNIA:**

---

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

PLEASE TAKE NOTICE THAT, Defendant SPS Technologies, LLC dba Cherry Aerospace ("SPS") by and through its counsel of record Fisher & Phillips LLP, hereby submits this Notice and Petition of Removal to remove this action from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California (Southern Division) pursuant to 28 U.S.C. §§ 1332 and 1441(b). The grounds for removal are as follows:

## I.   STATEMENT OF JURISDICTION

1.   This matter is a civil action over which this District Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). This action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, as set forth below. *See* 28 U.S.C. §§ 1332, 1441(b).

## II.   VENUE

2.   This action was filed in the California Superior Court for the County of Orange. Thus, venue properly lies in the United States District Court for the Central District of California. *See* 28 U.S.C. §§ 84(c), 1391, and 1441.

## III.   PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

3.   On October 28, 2021, Plaintiff Dannie Carmona ("Plaintiff" or "Carmona") filed a civil action in the Orange County Superior Court entitled *Dannie Carmona v. SPS Technologies, LLC, DBA Cherry Aerospace, et al.*, Case No. 30-2021-01228559-CU-WT-WJC ("State Lawsuit"). (*See* Declaration of Caroline S. Scala ("Scala Decl."), ¶ 3; **Exhibit A**.)

4.   On November 3, 2021, Carmona served SPS with the Civil Case Cover Sheet, Summons, and Complaint. (Scala Decl., ¶ 4.) The Complaint alleges eleven causes of action for: (1) Age Discrimination; (2) Race and National Origin Discrimination; (3) Hostile Work Environment Harassment; (4) Failure to Prevent

1  Discriminatory Practices; (5) Retaliation (FEHA); (6) Retaliation (Labor Code §
2  6310); (7) Whistleblower Retaliation (Labor Code § 1102.5); (8) Failure to Pay
3  Meal Break Compensation; (9) Failure to Pay Rest Break Compensation; (10)
4  Wrongful Termination; (11) Unlawful Business Practices (Bus. & Prof. Code §
5  17200, *et seq*.). (*Id*. **Ex. A.**)

6       5.    The court issued a notice of hearing regarding a case management
7  conference on October 29, 2021 and proofs of service for the three individual
8  defendants, Thana Kittinathonon, Tanner Tardiff, and Charles Palella were filed on
9  on November 5, 2021. (Scala Dec., ¶ 5, **Exhibit B**.)

10       6.    Defendant filed an Answer to the Complaint on December 2, 2021.
11  (Scala Dec., ¶ 6, **Exhibit C**.)

12       1.    No further proceedings have been had in the state court as of the date
13  of this Notice. (Scala Decl., ¶ 7.)

14       7.    This Notice of Removal is timely filed because it is filed within thirty
15  days of service of the initial pleading setting forth the claim for relief upon which
16  the State Lawsuit is based.  *See* 28 U.S.C. § 1446(b)(3); *see also Murphy Bros. v.*
17  *Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (11th Cir. 1999).  In addition, this
18  Notice of Removal has been filed within one year of commencement of the State
19  Lawsuit as required by 28 U.S.C. § 1446(b).  Therefore, this Notice of Removal
20  has been timely filed.

21  **IV.**    **<u>GROUNDS FOR REMOVAL</u>**

22
23      **A.**    **<u>Complete Diversity of Citizenship Exists Between Plaintiff and</u>**
            **<u>Defendants</u>**.
24
25      *1.*    ***Citizenship of Plaintiff***

26       8.    For diversity purposes, a person is a "citizen" of the state in which he
27  is domiciled.  28 U.S.C. § 1332 (a)(1); *see also Kanotor v. Wellesley Galleries,*
28  *Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *Kramer v. Warner-Lambert Co.*, 265 F.3d 853,

857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011). In fact, it is presumed that a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

9. In his Complaint, Plaintiff alleges that, at the time of the filing of his Complaint, he was a resident of the County of Orange, State of California. (*See* Scala Decl. **Exhibit A**, Compl. ¶ 1.) Nothing in the Complaint or other pleadings suggest otherwise. Accordingly, Plaintiff is domiciled in and is a citizen of the State of California.

2. ***Defendants' Citizenship***

10. At the time of the filing of this action, SPS was and continues to be a limited liability company organized under the laws of Pennsylvania with its principal place of business in Jenkintown, Pennsylvania. (Declaration of Jason A. Dalton ("Dalton Decl.") at ¶¶ 1-5.)

11. "[T]he citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members." *Johnson v. Columbia Properties Anchorage, LP* (9th Cir. 2006) 437 F. 3d 894, 899.

12. SPS has no individual owners or members. (Dalton Decl., ¶6.) It has only one corporate owner and member, parent corporation and Defendant PCC, since 2003. (*Id.*)

13. PCC was incorporated in Oregon in 1956 and its principal place of business is in Portland, Oregon. (*Id.*, ¶ 7.)

14. Thus, Defendant SPS is a citizen of Oregon.

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

### 3.     *Citizenship of Doe Defendants*

15.     The Complaint also names as Defendants DOES 1 through 30 ("DOE Defendants").   The thirty "Doe" Defendants named in the Complaint are not considered in assessing diversity.   *See*, *e.g.*, *Newcombe v. Adolf Coors Co*. 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. §1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.  As such, the district court was correct in only considering the domicile of the named defendants.").   Accordingly, the citizenship of the alleged Doe Defendants does not impact the diversity analysis for removal.

16.     Because Plaintiff is a citizen of California and SPS is a citizen of Oregon, complete diversity of citizenship exists in this matter.

### B.     <u>Defendants Tardiff, Kittinathonon, and Palella Are Fraudulently Joined Defendants</u>

17.     The Complaint alleges that individual defendants Tardiff, Kittinathonon, and Palella are citizens of California and thus, not diverse from the California citizenship of Carmona.  (*See* Scala Decl. **Exhibit A**, Compl. ¶¶ 3-5.) However, a non-diverse defendant named in a state court action is disregarded for diversity jurisdiction purposes if the Court determines that the defendant's joinder in the litigation is a "sham" or "fraudulent" in that no valid cause of action has been stated against that defendant. *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001).  "It is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co*. 139 F.3d 1313, 1318 (9th Cir. 1998).  "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).  Where, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff cannot recover against the party whose joinder is

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

1    questioned, the joinder is considered fraudulent.  *Calero v. Unisys Corp.*, 271

2    F.Supp. 2d 1172, 1176 (N.D. Cal. 2003).

3        18.    Carmona alleges only <u>one</u> cause of action for hostile work

4    environment against Tardiff, Kittinathonon, and Palella.  To state a cause of action,

5    a complaint must allege "*enough facts* to state a claim to relief that is *plausible on*

6    *its face.*"  *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570; *see also*

7    *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 684.  To establish a "plausible" claim, the

8    complaint must contain "more than labels and conclusions" or "formulaic

9    recitations of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

10       19.    The Complaint alleges only the following facts related to Tardiff,

11   Kittinathonon, and Palella:

12       • "Defendants TARDIFF and KITTINATHONON . . . frequently

13         berated the older employees, including Plaintiff, gave them the

14         worst positions and duties, failed to promote, and/or give

15         reasonable raises in salary and gave them the less than favorable

16         work schedules."  Scala Decl., ¶ 3, **Exhibit A**, Compl. ¶ 16.

17       • "[O]n or about August 07, 2020, while taking his socially distanced

18         lunch break outside, and in accordance with and following CDC

19         guidelines, Plaintiff and his coworkers were approached by a

20         young man, Defendant PALELLA, whom they had never seen

21         before. Defendant PALELLA told the group that they needed to

22         separate, despite already being adequately socially distanced.

23         Plaintiff politely asked the man who he was and what was his

24         position. The young man, Defendant PALELLA, responded that he

25         was a sales manager, became agitated and told Plaintiff he was

26         being insubordinate."  *Id.,* Compl. ¶¶ 18-19.

27       • "On or about January 20, 2021, Plaintiff was called into an office

28         with a Human Resources representative of Defendant CHERRY

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

FP 42411503.1

AEROSPACE and Defendants TARDIFF and KITTINATHONON. Plaintiff was told he was being terminated under the false pretense that he had not followed social distancing rules, and for being deemed a close contact with the co-worker who had tested positive for COVID-19 in December 2020." *Id.,* Compl. ¶ 22.

1.  *Carmona's Third Cause of Action for Hostile Work Environment as to Tardiff, Kittinathonon, and Palella Fails as a Matter of Law.*

20.    None of the allegations in the complaint support a claim for hostile work environment against Tardiff, Kittinathonon, or Palella and therefore they are sham defendants and must be disregarded for purposes of removal.

21.    To establish a hostile work environment claim, a plaintiff must prove he was (1) "subjected to verbal or physical conduct" of a harassing nature; (2) "the conduct was unwelcome;" and (3) the conduct as sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *See Manatt v. Bank of America, NA* (9th Cir. 2003) 339 F.3d 792, 798 (citing *Kang v. U. Lim America, Inc.* (9th Cir. 2002) 296 F.3d 810, 817). Courts have ruled that "simple teasing" and "offhand comments," are not actionable. *See Manatt, supra,* 339 F.3d at 798. Where, as here, the alleged harassment is based on race, national origin, and age, Plaintiff must establish that he was subjected to offensive comments or other abusive conduct that was clearly based on his race, national origin, and age and **was "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment."** *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609 (1989) (emphasis added). Conduct that is "occasional, isolated, sporadic, or trivial" is insufficient. *Id.*

22.    In *Manatt,* the Court ruled that plaintiff's allegations that defendant's repeated use of racial epithets, which occurred over a span of **two-and-a-half years**,

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

1  did not constitute harassment because the conduct, although offensive and

2  inappropriate, was not sufficiently "severe or pervasive to alter the conditions of

3  [plaintiff's] employment and create an abusive work environment."  *Id.* at 795-98

4  ("Viewing the evidence in the light most favorable to [plaintiff] Manatt, we

5  conclude that the conduct of Manatt's co-workers and supervisor—while offensive

6  and inappropriate—did not so pollute the workplace that it altered the conditions

7  of her employment.  Her hostile work environment discrimination claim must

8  therefore fail.") (*citing Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th

9  Cir. 2002) (finding no hostile environment discrimination where the employee was

10  told that he had "a typical Hispanic macho attitude," that he should work in the

11  field because "Hispanics do good in the field" and where he was yelled at in front

12  of others);  *Nielsen v. Trofholz Technologies, Inc.* (E.D. Cal. 2010) 750 F.Supp.2d

13  1157, 1169 (finding that defendant's verbal attacks and requirement that plaintiff

14  work 30 days straight "certainly has not shown that the harassment was severe and

15  pervasive.").

16      23.    In *Kortan v. Cal. Youth Auth.* (9th Cir. 2000) 217 F.3d 1104, 1111, the

17  court found there was no hostile work environment where the supervisor referred

18  to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on

19  several occasions and directly called plaintiff "Medea."  The court specified that

20  "however offensive his language, [the conduct] was not severe or pervasive"

21  enough to bring a hostile work environment claim.  *Id.* (Specifying that the

22  magnitude of conduct required for a hostile work environment claim is exemplified

23  in *Montero v. AGCO Corp.,* (9th Cir. 1999) 192 F.3d 856, in which a plaintiff was

24  subjected to crude gestures, supervisors grabbing their crotches while speaking to

25  her, placing their faces on plaintiff's bottom, trying to bite her neck, etc.)

26      24.    There can be no dispute that Carmona has failed to allege harassing

27  conduct that is severe and pervasive by Tardiff, Kittinathonon, or Palella based on

28  his race, national origin, and age.  To the contrary, both the amount and the nature

of conduct alleged by Plaintiff belie his claim that he was subjected to a hostile work environment.  Indeed, Carmona's allegations consists mainly of personnel decisions regarding his pay, job position and duties, and termination. Scala Decl., ¶ 3, **Exhibit A**, Compl. ¶¶ 16, 18-19, 22.  Notably, Carmona does not allege that any of the individual defendants made any racial and or age-based slurs and/or engaged in inappropriate physical conduct.  Indeed, Carmona does not point to any specific comments.   Instead he makes the vague allegation that Tardiff and Kittinathonon "frequently berated the older employees". He alleges no such comments against Palella. This type of vague allegation is insufficient to support Carmona's hostile work environment claim against the individual defendants. Moreover, Carmona's allegations are objectively much weaker than allegations found in cases where Courts hold misconduct is insufficient to sustain a hostile work environment claim.   If the Court in *Manatt* and *Kortan* concluded that repeated racial epithets over two-and-a-half-years and directly calling Plaintiff and others derogatory terms does not rise to the level of "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment," then certainly the facts alleged in Carmona's complaint against Tardiff, Kittinathonon, or Palella do not rise to such a level.

25.   In addition, personnel management actions, including "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions" fall outside the purview of harassment. *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 65.  *McKenna v. Permanente Medical Group, Inc.*, (E.D. Cal. 2012) 894 F.Supp.2d 1258, 1280. California law distinguishes between discriminatory employment actions taken by *an employer* and harassment from *an individual* coworker or supervisor.  Under FEHA, is it unlawful for "an employer" to discriminate, while it is unlawful for "an employer . . . or any other person" to harass.  *See* Cal. Gov. Code. §§ 12941, 12940.

An individual employee, in addition to an employer, can be held liable for harassment. In *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996), the California Court of Appeal makes a distinction between the two that is critical to the argument that Tardiff, Kittinathonon, and Palella are sham defendants and that Plaintiff fails to allege a cause of action for harassment against them:

> [T]he Legislature intended that ***commonly necessary personnel management actions*** such as hiring and firing, ***job or project assignments***, office or work station assignments, promotion or demotion, performance evaluations, ***the provision of support***, the assignment or non-assignment of supervisory functions ***. . . do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management***. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. ***Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management***. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal. App. 4th at 64-65 (emphasis added). In other words, personnel management activity does not fall within the scope of actionable harassment. *Reno v. Baird*, 18 Cal. 4th 640, 646–647 (1998); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) ("[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives"); *McKenna v. Permanente Medical Group, Inc.*, 894 F.Supp.2d 1258, 1280 (E.D. Cal. 2012).

26. In the instant case, Carmona's allegations are mainly comprised of personnel management decisions and cannot support a harassment claim against Tardiff, Kittinathonon, or Palella. Specifically, Carmona alleges: (1) Tardiff and Kittinathonon gave Plaintiff the worst positions and duties, failed to promote him, and/or give him a reasonable raise in salary and gave him less than favorable work

DEFENDANT'S NOTICE AND PETITION OF REMOVAL
FP 42411503.1

schedules; (2) Palella told Carmona he was being insubordinate when Carmona questioned Palella's instruction to socially distance; (3) Tardiff and Kittinathonon were in the office with Carmona when he was terminated.  Such conduct falls squarely within the scope of personnel management activity and cannot constitute unlawful harassment under California law.  *See Reno*, 18 Cal. 4th at 646-47.  *See, e.g., Janken,* 46 Cal. App .4th at 64–65; *Mendoza v. v. Staples, Inc*., 2014 WL 6670221, at *3-6 (C.D. Cal. Nov. 24, 2014) (finding that allegations regarding personnel management actions did not amount to harassment under FEHA).

27.    Because Carmona cannot allege any claims as a matter of law against Tardiff, Kittinathonon, or Palella, they are "sham" defendants and removal is proper.  *Hamilton Materials, Inc., v. Dow Chem. Corp*. (9th Cir. 2007) 494 F.3d 1203, 1206 ("[i]f plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.")

28.    Although all defendants to an action normally must consent to removal, the consent of fraudulently joined parties is not required for removal of an action from state to federal court.  *Emrich v. Touche Ross & Co.* (9th Cir. 1988) 846 F.2d 1190, 1193 n.1 (citing *Hewitt v. City of Stanton* (9th Cir. 1986) 798 F.2d 1230, 1233).  Because Tardiff, Kittinathonon, and Palella were fraudulently joined, their consent to removal is not required.  Nonetheless, Tardiff, Kittinathonon, and Palella's consent to removal pursuant to 28 U.S.C. § 1446(b)(2)(A) was filed and served concurrently with Defendant's Notice of Removal.

29.    Based on the foregoing, diversity of citizenship exists between Carmona and SPS and this case must be removed to the instant court.

**C.    <u>The Amount in Controversy Requirement Is Satisfied</u>.**

30.    Diversity jurisdiction exists where the parties are diverse of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. §1332(a).

31.     Plaintiff's Complaint does not identify the amount in controversy in this action, though it does indicate that the amount in controversy exceeds $25,000. (*See* Scala Decl. **Exhibit A,** ¶ 10**.**)

32.     The $75,000 threshold necessary for diversity jurisdiction is not particularly burdensome.  In fact, when seeking removal of a state action to federal court based on diversity jurisdiction, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction.  *See, e.g., Saulic v. Symantec Corp.*, No. SA-CV-07-610-AHS(PLAx), 2007 WL 5074883, *5 (C.D. Cal. Dec. 26, 2007); *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F.Supp.3d 149, 152 (D.D.C. 2014).  A defendant need only to establish by a preponderance of evidence that the claims exceed the jurisdictional minimum.  *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 982 (9th Cir. 2013); *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

33.     Plaintiff does not specify a damage sum in his Complaint. Accordingly, this Court may consider whether it is facially apparent from the Complaint that it is more likely than not that the jurisdiction amount of $75,000 is in controversy.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Defendants, however, are not obliged to "research, state, and prove the plaintiff's claims for damages."  *Singer*, 116 F.3d at 377.  Notwithstanding the fact that Plaintiff fails to specify the dollar amount of damages being sought in the Complaint, the allegations of the Complaint demonstrate that Plaintiff seeks damages in excess of the jurisdictional requirement of $75,000.  Economic damages, non-economic damages, general damages, punitive damages and

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

1    attorneys' fees are all included in determining the amount in controversy.  *See Galt*

2    *G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

3        34.    Defendant adamantly denies Plaintiff's allegations, denies any

4    liability, and denies Plaintiff has suffered any damages.  Nevertheless, in assessing

5    the amount in controversy for diversity jurisdiction purposes, a court must assume

6    that a jury will return a verdict for the plaintiff on all claims made in the complaint.

7    *Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th

8    Cir. 1972); *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1117 (C.D. Cal. 2010);

9    *Kenneth Rothchild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001

10   (C.D. Cal. 2002).  This includes any possible award of attorneys' fees where, as

11   here, a statute at issue awards attorneys' fees to the prevailing party.  *See,*

12   *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("The amount in

13   controversy includes the amount of damages in dispute, as well as attorney's fees,

14   if authorized by statute or contract.") (citations omitted); *Galt G/S v. JSS*

15   *Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998).  Essentially, the ultimate inquiry

16   is what amount is put in controversy by the plaintiff's complaint, not what the

17   amount of a defendant's liability (if any) will ultimately be.

18       35.    In the instant case, Plaintiff alleges eleven causes of action seeking

19   recovery of general damages, including non-economic damages; special damages,

20   including without limitation, loss of wages, salary, and benefits; punitive and

21   exemplary damages; payment of wages, statutory penalties, and waiting time

22   penalties; pre-judgment interest and interest provided by law; and attorneys' fees

23   and cost of suit.  (Scala Decl., **Exhibit A**, Compl., Prayer ¶¶7-17.) California

24   federal courts have routinely found that the amount-in-controversy requirement is

25   satisfied in cases with similar claims.  *See, e.g., Rodriguez v. Home Depot, USA,*

26   *Inc.*, No. 16-CV01945-JCS, 2016 WL 3902838 (N.D. Cal. July 19, 2016) (amount-

27   in-controversy requirement satisfied in wrongful termination case seeking lost

28   wages, equitable relief, restitution, emotional distress damages, punitive damages,

1    and attorneys' fees and costs); *Castanon v. Int'l Paper Co.*, No. 2:15-CV-08362-
2    ODW, 2016 WL 589853 (C.D. Cal. Feb. 11, 2016) (amount-in-controversy
3    requirement satisfied in disability discrimination case seeking lost earnings,
4    emotional distress and punitive damages, and attorneys' fees); *Simmons v. PCR*
5    *Tech.*, 209 F. Supp. 2d 1029 (2002) (amount-in-controversy requirement satisfied
6    in employment discrimination case seeking compensatory damages, punitive
7    damages, emotional distress damages, injunctive relief, and attorneys' fees).

8       36.   Here, the amount in controversy exceeds the sum of $75,000,
9    exclusive of interest and costs, based on the following allegations and evidence:

10      37.   ***Special Damages.***

11      38.   Plaintiff alleges that as a result of Defendants' conduct, he is entitled
12   to "loss of wages, salary, [and] benefits."  (See, for example, **Ex. 1**, Compl. at ¶
13   62).   Under California's Fair Employment and Housing Act, Cal. Gov't Code
14   section 12926, *et seq.*, all non-contractual tort remedies are potentially recoverable,
15   including back pay, front pay, compensatory damages, punitive damages,
16   attorneys' fees and costs.  *See, e.g., Commodore Home Sys., Inc. v. Super. Ct.*, 32
17   Cal.3d 211 (Cal. 1982).  Plaintiff was employed as a Machine Operator and was
18   earning $32.27 per hour at the time of his termination on January 20, 2021.
19   (Declaration of Jennifer Adams ("Adams Decl.") ¶¶ 5-6.)  In addition to base pay,
20   Plaintiff was regularly paid overtime.  (Adams Decl. at ¶ 6.) Plaintiff also received
21   pension and insurance benefits from SPS and bonuses in the amounts of $657.39
22   in 2019 and $742.50 in 2020. (*Id.*)   In the twelve-month period prior to Plaintiff's
23   termination on January 20, 2021, Plaintiff earned $65,452.64.  (*Id.* at ¶ 6, **Ex. 1 to**
24   **Adams Decl**.)   This amounts to $5,454.39 average monthly pay, not including
25   benefits.

26      39.   Plaintiff makes no allegation in his Complaint that he has found other
27   work, let alone work that pays the same compensation that he previously received
28   at SPS.  Thus, Plaintiff is seeking approximately 10 months of lost wages from the

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

time of his termination in January 2021 to the filing of the Complaint in October 2021, and this claim will continue to accrue during the pendency of this litigation. Therefore, assuming it takes approximately 18 more months before this matter is resolved by trial, Plaintiff will claim approximately 28 months of lost wages, or $152,722.92 ($5,454.39 per month x 28 months).  However, Plaintiff's claimed lost wage damages do not end there. Plaintiff may also be entitled to "front pay" damages in the form of potential future lost wages beyond even the date of trial, to compensate Plaintiff for lost future expected earnings had the alleged unlawful termination not occurred. Such damages can include pay for multiple years of employment. *See, e.g.*, *Rabago-Alvarez v. Dart Industries, Inc.*, 55 Cal. App. 3d 91, 97 (1976) (4 years' pay deemed reasonable as "front pay" damages). Even assuming Plaintiff only obtains 3 years of front pay damages, this would amount to an additional $196,357.92.

40. ***General Damages, Including Emotional Distress.***    Plaintiff also seeks an unspecified amount of general damages, which necessarily include damages for emotional distress.  Plaintiff alleges that he "has suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish . . ." (*See*, for example, Scala Decl., **Exhibit A**, Compl. ¶ 38.)  Accordingly, it is very likely that Plaintiff will seek a substantial sum for emotional distress damages.   *Simmons v. PCR Technology, Inc.*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002) ("emotional distress damages in a successful employment discrimination case may be substantial.").  Recent verdicts in employment cases confirm that emotional distress awards may be substantial:

    a. *Sonia Lozano v. Alcoa Inc., Alcoa Fastening Systems*, Superior Court, Los Angeles County, 2006 WL 2561276 (Cal.Super. Apr. 19, 2006) (jury awarded the plaintiff **$9,065,000** after determining that the plaintiff was wrongfully terminated and that defendant intentionally inflicted emotional distress on her.)

b. *Forer vs. St. Luke's Hospital*, United States District Court, N.D. California, 2001 WL 558058 (N.D. Cal. Mar. 21, 2001) (jury awarded **$260,000** for emotional distress in connection with the plaintiff's wrongful termination claim)

c. *Andrews vs. Hansa Stars Inc.*, Superior Court, Los Angeles County, 2009 WL 1587809 (Cal.Super. Apr. 16, 2009) (in connection with wrongful termination claims, two of the plaintiffs awarded **$375,000** and **$225,000** for emotional distress damages.)

d. *Silverman vs. Stuart F. Cooper Inc.*, Los Angeles County, 2013 WL 5820140 (Cal.Super. July 19, 2003) (jury awarded the plaintiff **$151,333** for past and future emotional distress in wrongful termination, FEHA discrimination, FEHA retaliation, FEHA harassment/failure to prevent discrimination and harassment, and failure to pay final wages and waiting time penalties case.) *See, Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437 MMM (FMOx), 2013 WL 815975, at *2 (C. D. Cal. Mar. 5, 2013) (a court may consider verdicts in similar cases when determining whether the amount in controversy exceeds the jurisdictional minimum where the complaint on its face does not identify a specific amount in controversy); *Marcel v. Pool Co.*, 5 F.3d 81, 83 (5th Cir. 1983) (court properly considered jury verdicts in other similar cases to reach conclusion that the amount in controversy exceeded $75,000.00).

41.   ***Attorney's Fees.***  Plaintiff also seeks to recover an unspecified amount in attorneys' fees related to all causes of action. (*See*, Scala Decl., **Exhibit A**, Prayer ¶ 16.)  In the language of the D.C. District Court, "[w]hen attorney fees are added into the equation," the conclusion that more than $75,000 is in controversy "becomes irresistible."  *Parker-Williams, supra*, 53 F.Supp.3d at p. 153.  This conclusion is only further supported by the fact that in the Ninth Circuit, district

courts have the discretion to calculate fee awards using either the lodestar method or the "percentage-of-the-fund" method. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citations omitted). As such, even where "the Court lacks the information required to calculate [attorneys'] fees, it is difficult to believe that the amount in controversy [] could be lower than $75,000 when the [attorneys'] fees are factored in along with" other available damages. *Parker-Williams, supra*, 53 F.Supp.3d at p. 152. Simply put, it is more than likely that Plaintiff's attorney's fees, alone, will exceed $75,000 if this matter goes to trial.

42. ***Punitive Damages.*** Plaintiff also seeks punitive damages. (*See,* Scala Decl., **Exhibit A**. Prayer ¶ 15.) Many punitive damages verdicts against businesses exceed $75,000.00. *See, Dunn v. Allstate Insurance Co.*, 1997 WL 813002 at *2, No. 97CV1113JM (RBB) (S.D. Cal. Dec. 15, 1997) (since removing defendant was a corporation, "it [was] more likely that any award of punitive damages would exceed $75,000.00"); *see also, Richmond v. Allstate Insurance Co.*, 897 F.Supp. 447, 451 (S.D. Cal. 1995). *See also, Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) (concluding that a punitive damages claim was "more likely than not" to exceed the jurisdictional amount of $75,000). For instance, the Court might find useful the following punitive damages verdicts:

    a.  *Leggins v. Thrifty Payless Inc. d/b/a Rite Aid*, Los Angeles Superior Court Case No. BC511139, 2015 WL 4748037 (Cal. Super. July 17, 2015) (Employee alleged wrongful termination, disability discrimination, harassment, and retaliation in violation of FEHA and the FMLA, and failure to prevent discrimination, harassment, and retaliation. Jury verdict for the plaintiff in the amount of $8,769,128, including **$5,000,000 in punitive damages**, $213,213 for past economic loss, $1,055,915 for future economic loss, $1,500,000 for past non-economic loss, and $1,000,000 for future economic loss).

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

b. *Verdine v. McDonnel-Douglas Corporation et al.*, 1998 WL 35471332 (Cal.Super. July 7, 1998) (**$26,000,000 in punitive damages**, $544,205 in economic damages; and $1,500,000 in non-economic damages awarded in wrongful termination case).

c. *Yang v. ActionNet, Inc.*, No. 2:14-cv-00792-AB-PJW, 2016 WL 2748603 (C.D. Cal. Mar. 18, 2016) (wrongful termination case where $2,400,000 in compensatory damages and **$5,000,000 in punitive damages** awarded to the plaintiff)

d. *Songco v. Century Quality Management, Inc.*, Los Angeles Superior Court, 1997 WL 682397 (Cal.Super. Oct. 1997) (**$245,000 in punitive damages** on $17,982 in compensatory damages awarded in wrongful termination case).

43.     Although Defendants adamantly deny that any award of damages, let alone punitive damages, are recoverable, Plaintiff's prayer for punitive damages, by itself, also satisfies the $75,000 requirement.

44.     Based on the nature of the allegations and damages sought in the Complaint, the evidence is sufficient to establish that Plaintiff has placed in controversy an amount exceeding the jurisdictional amount of $75,000.00, exclusive of costs and interest.   Accordingly, this State Court action may be removed to the United States District Court for the Central District of California – Southern Division because, at the time this action was filed and the present time, diversity jurisdiction exists.

## V.     **PROCEDURAL PREREQUISITES**

45.     Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Central District of California is the appropriate court to which to remove this action from the Orange County Superior Court, where the action was filed.

46.     As required by 28 U.S.C. § 1446(d), a Notice of Removal will be

DEFENDANT'S NOTICE AND PETITION OF REMOVAL
FP 42411503.1

1   served on Plaintiff's counsel of record Wilshire Law Firm and filed with the Clerk

2   of the Court in the Superior Court for the State of California, County of Orange.  A

3   copy of the Notice of Removal of Action to Federal Court is attached hereto as

4   **Exhibit D** (without exhibits because the exhibit is this Notice).

5          47.   In filing this notice, SPS does not waive any defenses.

6          48.   In filing this notice, SPS does not admit any of the allegations made

7   in Plaintiff's State Lawsuit.

8   **VI.   CONCLUSION**

9          49.   Based on the foregoing, SPS prays that the above-described action

10  pending in the Superior Court of California, County of Orange be removed to the

11  United States District Court for the Central District of California.

12

13  DATE:  December 3, 2021          **FISHER & PHILLIPS LLP**

14

15                              By:  */s/ Regina A. Petty*
                                     Regina A. Petty
16                                   Caroline S. Scala
                                     Attorneys for SPS Technologies, LLC dba
17                                   Cherry Aerospace

18

19

20

21

22

23

24

25

26

27

28

---

19
DEFENDANT'S NOTICE AND PETITION OF REMOVAL

FP 42411503.1

**CERTIFICATE OF SERVICE**

I, the undersigned, am at least 18 years old and not a party to this action. I am employed in the County of San Diego or Orange with the law offices of Fisher & Phillips LLP and its business address is 4747 Executive Drive, Suite 1000, San Diego, California, 92121 or 2050 Main Street, Suite 1000, Irvine, California, 92614.

On December 3, 2021, I served the following document(s) **DEFENDANT'S NOTICE AND PETITION OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(a), 1441, AND 1446** on the person(s) listed below by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Nicol E. Hajjar (SBN 303102)<br>Nathan Kingery (SBN 309920)<br>WILSHIRE LAW FIRM<br>3055 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90010 | Telephone: 9213)381-9988<br>Facsimile: (213)381-9989<br>E-Mail: nicol@wilshirelawfirm.com;<br>nkingery@wilshirelawfirm.com<br>Attorneys for Dannie Carmona |

☒    **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed December 3, 2021, at Irvine, California.

Jill McIntee
_____
Print Name

By: */s/ Jill McIntee*
_____
Signature